UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DONNA MARTINEZ,

        *Plaintiff*,

   -against-

THE MOUNT SINAI HOSPITAL,

        *Defendant.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-22-15

14 Civ. 2548 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Defendant Mount Sinai Hospital ("Mount Sinai") terminated Plaintiff Donna Martinez after documenting 84 instances of tardiness at her job as a billing coordinator. Plaintiff now claims under the Family and Medical Leave Act ("FMLA"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL") that Mount Sinai knew her tardiness was due to a chronic eye condition called uveitis and yet failed to adequately accommodate her disability. Plaintiff voluntarily withdrew with prejudice the FMLA claim,[1] and the parties now cross-move for summary judgment on the NYCHRL and NYSHRL claims.[2]

---

[1] *See* Transcript of June 15, 2015 Hearing, Dkt. 44 at 4 (Plaintiff's Counsel: "Yes, of course. The federal claim, the FMLA claim we're willing to withdraw with prejudice.").

[2] The Court in its discretion retains supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. It is true that "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). But the Court does not abuse its discretion in retaining jurisdiction where the "values of judicial economy, convenience, fairness, and comity" so require. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Delany v. Bank of America Corp.* is instructive. 766 F.3d 163 (2d Cir. 2014). There the Second Circuit held that the district court did not abuse its discretion by retaining jurisdiction in an employment discrimination suit after dismissal of all federal claims where the federal and state claims were both based on the plaintiff's employment and termination, discovery was complete, and the state claim did not turn on novel or unresolved questions of state law. *Id.* at 170. So too here. The federal and state claims deal with Plaintiff's employment and termination, discovery is complete, and Plaintiff withdrew her federal claim

1

Since Plaintiff fails to establish a prima facie case for failure to accommodate, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion.

## BACKGROUND

Mount Sinai hired Plaintiff as a billing coordinator in 1996. Def. Rule 56.1 Stmt., Dkt. 29 ¶ 1. In 2003, she left to work in private practice, but was rehired by Mount Sinai as a senior billing coordinator in August 2005. *Id.* ¶¶ 1, 2. Plaintiff reported to Warren Mascarenas, the Revenue Cycle Manager for her department, who in turn reported to Jamie Hwang, the Revenue Cycle Director. *Id.* ¶¶ 4, 5. Plaintiff's responsibilities included managing daily charge entries and processing payments for doctors working in the department. *Id.* ¶ 7. Mount Sinai has a written policy requiring each employee to report on time for his or her shift, and Plaintiff was aware of this policy. *Id.* ¶¶ 17-20.

Plaintiff suffers from uveitis in her right eye, a chronic condition "which causes flareups making it difficult for [her] to work." Martinez Aff., Dkt. 39 at ¶ 3. The condition causes pain and redness, and requires administration of prescription eye drops, after which it often takes two hours for Plaintiff to regain sight in the affected eye.[3] *Id.* ¶ 4.

When Plaintiff returned to Mount Sinai in 2005, her work schedule was Monday through Friday from 8:00 a.m. to 4:00 p.m. Def. Rule 56.1 Stmt. ¶ 28. On April 21, 2010, Plaintiff

---

only after Defendant filed its moving papers. The case presents no novel or unresolved questions of state law. Judicial economy, convenience, fairness, and comity warrant retaining jurisdiction.

[3] At her deposition, Plaintiff testified that she sought treatment from her former employer, Dr. Ralph Jackson, from 1996 to 2011. Def. Rule 56.1 Stmt. ¶ 77. But when Mount Sinai sent Dr. Jackson a HIPAA Authorization for the release of Plaintiff's medical records, Dr. Jackson's office responded that there was "[n]o such patient at our facility." *Id.* ¶ 74. Plaintiff initially attempted to explain this discrepancy by stating that "she has not treated with Dr. Jackson for more than 10 years so it is possible that the records have been misplaced or destroyed," but later stated that she had received sample bottles of prescriptions from Dr. Jackson through 2013 and the "informal nature of this treatment has resulted in sparse records." *Id.* ¶ 76; Martinez Aff. ¶ 7.

received a formal, written First Warning for "excessive absenteeism/unscheduled absences or lateness," due to 32 instances of tardiness from January to April 2010. *Id.* ¶ 31. The document warned that further violations "will result in disciplinary action." On June 14, 2010, Plaintiff received a Second Warning for 15 additional instances of tardiness. *Id.* ¶ 32. On August 25, 2010, Plaintiff received a Third Warning for 13 further instances of tardiness. *Id.* ¶ 33. On December 20, 2012, Plaintiff received a Final Warning for 16 additional instances of tardiness in November and December 2012. *Id.* ¶ 34. Mascarenas and Hwang met with Plaintiff after the issuance of the December 20 warning and offered to switch Plaintiff's start time to 8:30 a.m. or 9:00 a.m. to address her repeated tardiness; Plaintiff chose to switch to the 8:30 a.m. start time. *Id.* ¶¶ 35-36. Plaintiff did not file a grievance with Mount Sinai's labor relations department after any of these warnings. *Id.* ¶ 60.

On May 7, 2013, Plaintiff received a Final Warning with suspension for seven additional instances of tardiness and, in a meeting soon after, Mascarenas informed Plaintiff that any further violations of the attendance policy would result in termination. *Id.* ¶¶ 37-38. Plaintiff was late again on June 24, 2013. *Id.* ¶ 39. That morning at 6:25 a.m. Plaintiff contacted Mount Sinai's employee call-in service and said that she would not arrive until around 11:00 a.m. without providing a reason.[4] *Id.* ¶ 40. She also sent a text message to co-worker Emily Hannon, writing "I woke up this morning with the pain in my eye again" and "I'm going to take a couple of hours to see if the drops help it so I can make it in." *Id.* ¶ 45. Plaintiff did not notify Mascarenas or Hwang that she was arriving late. *Id.* ¶ 44. Plaintiff was terminated on July 1, 2013. *Id.* ¶¶ 51,

---

[4] At her deposition, Plaintiff testified that she informed the operator that she was arriving late due to her eye condition. McEvoy Decl., Dkt. 31 Ex. 2 at 106. That claim is contradicted by the audio recording of the call, submitted into evidence. Plaintiff's later-submitted affirmation states only that she advised the operator that she would be late. Martinez Aff. ¶ 17.

3

52. On July 5, 2013, Plaintiff filed a grievance with Mount Sinai's labor relations department; the termination was upheld on July 28. *Id.* ¶¶ 56, 57.

At her deposition, Plaintiff testified that she had informed Mascarenas and Hwang during meetings to address her tardiness that she suffered from uveitis and that the condition often caused her to need to come to work late. McEvoy Decl., Dkt. 31 Ex. 2 ("Martinez Dep. Tr.") at 123-24. She testified that she had explained to Mascarenas and Hwang that the condition caused "pain in my eye and I can't see out of it." *Id.* at 125. Plaintiff also testified that she had submitted documents to Mount Sinai that described her eye condition, and that such documents should be in her employee file. *Id.* Plaintiff further states in her affirmation that during disciplinary sessions with Hwang, Mascarenas and others, she "advised the Employer that the latenesses were caused by my eye condition, including the flare-ups and treatment." Martinez Aff. ¶ 15.

Defendant contends that Plaintiff never informed anyone at Mount Sinai with supervisory authority about her eye condition until after she was terminated. Mascarenas and Hwang both affirm that they had no knowledge of Plaintiff's condition until, at a July 1, 2013 post-termination meeting, Plaintiff stated that she had "dry eyes," which caused her repeated tardiness. Mascarenas Decl., Dkt. 33 ¶¶ 13-15; Hwang Decl., Dkt. 30 ¶¶ 8-10. Further, no Mount Sinai files or other documents, including those with notes that Plaintiff herself submitted during disciplinary hearings and annual performance reviews, mention Plaintiff's eye condition. *See* Def. Mem., Dkt. 28 at 14.

The parties also disagree as to whether Emily Hannon (who Plaintiff texted on June 24, 2013) had supervisory authority over Plaintiff. Plaintiff testified that Hannon was an "administrative director" and, while not her "direct supervisor," served as the "main go-to

4

person" in the department. Martinez Dep. Tr. at 31. Plaintiff later affirmed that "although [Plaintiff] was nominally managed by other individuals, I normally reported to Ms. Hannon who sometimes gave me assignments; directed my work on occasions; and had input into my evaluations." Martinez Aff. ¶ 16. Hannon testified that she did not supervise Plaintiff and the June 24 text message was the first time Plaintiff informed her of the eye condition. McEvoy Decl., Dkt. 31 Ex. 3 at 29-30.

## DISCUSSION

### I. Legal Standards

A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001) (internal quotations marks omitted). "When making this determination, the court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Id.* at 465-66. The Second Circuit has stressed, however, that "summary judgment may be appropriate even in the fact-intensive context of [employment] discrimination cases." *Id.* at 466. For example, the Second Circuit held that plaintiffs failed to create a genuine issue of material fact where "the only 'evidence' cited in plaintiffs' brief is their own self-serving testimony" and plaintiffs made "no attempt . . . to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery." *Deebs v. Alstom Transp., Inc.*, 346 Fed. Appx. 654, 656 (2d Cir. 2009).

To prevail on her NYCHRL and NYSHRL claims, Plaintiff bears the initial burden of

making a prima facie showing that (i) she suffered from a disability within the meaning of the statutes; (ii) Mount Sinai knew she suffered from the disability; (iii) she could have performed her job with reasonable accommodation; and (iv) Mount Sinai failed to make such accommodation. *See Roberts v. AIG Global Inv. Corp.*, 06 cv 5966 (GEL), 2008 U.S. Dist. LEXIS 76891, at *22 (S.D.N.Y. Sept. 29, 2008) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000)). An employer is not liable for failure to accommodate a disability that it is unaware of, and "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006). After an employee requests an accommodation, "the employer must engage in [an] 'interactive process' of finding a suitable accommodation." *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001). The employer must provide an "effective" accommodation; it is "not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. IBM Corp.*, 787 F.3d 89, 95 (2d Cir. 2015).

## II.  Application

Mount Sinai argues that it is entitled to summary judgment because Plaintiff has not created a genuine issue of material fact as to whether Mount Sinai knew of Plaintiff's disability, whether Plaintiff requested an accommodation, and whether Mount Sinai offered a reasonable accommodation.

As to Mount Sinai's knowledge of Plaintiff's disability, there is a genuine issue of material fact. Plaintiff testified and later affirmed that she informed Mascarenas, Hwang and others that she suffered from uveitis and that the condition caused her frequent tardiness. Mascarenas, Hwang, and the documentary evidence contradict that assertion, but there is enough

evidence for a reasonable jury to return a verdict in Plaintiff's favor as to this issue.

But Plaintiff has not created a genuine issue of material fact as to whether she requested an accommodation and whether Mount Sinai failed to offer a reasonable accommodation. At most, the record shows that Plaintiff informed her supervisors only that "the latenesses were caused by my eye condition." Martinez Aff. ¶ 15. There is no evidence in the record that Plaintiff requested the specific accommodation that she now implicitly argues Mount Sinai was required to provide—full freedom to frequently and without prior warning come to work hours past her scheduled start time. *See Bresloff-Hernandez v. Horn*, 05 cv 0384 (JGK), 2007 WL 2789500, at *10 (S.D.N.Y. Sept. 25, 2007) (granting summary judgment in part because "[w]ithout more definite notice from the plaintiff, namely, some indication of a disability and how the disability relates to the request for an accommodation, the defendant was unable to participate in the interactive process"). Indeed, Mount Sinai offered to accommodate Plaintiff's lateness by allowing her to switch her start time to 8:30 a.m. or 9:00 a.m. Plaintiff chose the 8:30 a.m. accommodation and there is no evidence that she informed Mount Sinai that this accommodation was inadequate. *See Waltzer v. Triumph Apparel Corp.*, 09 cv 288 (DLC), 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010) ("Employees are not entitled to hold out for the most beneficial accommodation, and the employer need not offer the accommodation that the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends.") (internal citations and quotation marks omitted). The Court grants Defendant's motion for summary judgment and dismisses Plaintiff's NYCHRL and NYSHRL claims.

## **CONCLUSION**

The Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment. The Clerk is directed to enter judgment for Defendant and terminate 14 cv 2548.

Dated: New York, New York
      December 22, 2015

SO ORDERED

*Paul Crotty*

PAUL A. CROTTY
United States District Judge